# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**JAMES T. ACKLIN**
Chief Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

**FILED**
Jul 12 2012, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

ANDREW MCWHORTER,                )
                                 )
    Appellant-Petitioner,        )
                                 )
       vs.                    )    No.  33A01-1202-PC-72
                                 )
STATE OF INDIANA,                )
                                 )
    Appellee-Respondent.         )

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable E. Edward Dunsmore, Judge
Cause No.  33C02-0806-PC-1

**July 12, 2012**

**OPINION - FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Andrew McWhorter ("McWhorter") appeals the denial of his petition for post-conviction relief, wherein he challenged his conviction for Voluntary Manslaughter. He presents the sole issue of whether he was denied the effective assistance of trial counsel. We reverse and remand for retrial on Reckless Homicide.

**Facts and Procedural History**

On direct appeal, the Court recited the relevant facts as follows:

In December 2005, McWhorter, Amanda Deweese (Deweese), and their baby were living with Barbara Gibbs (Gibbs), McWhorter's grandmother. On December 2, 2005, inside Gibbs' home, McWhorter shot Deweese in the head with a twelve-gauge shotgun at close range causing her death.

Earlier that night, both Deweese and McWhorter visited Janis Floyd's (Floyd) home. Floyd observed Deweese acting nervous and crying, and observed that McWhorter smelled of alcohol. Meanwhile, Gibbs attended a Christmas show, arriving home about 10:45 p.m. Shortly after she arrived home McWhorter and Deweese came home as well. The two argued. Just as Floyd observed, Gibbs could tell that McWhorter was intoxicated.

A few moments later, Deweese and Gibbs were sitting in the kitchen and McWhorter came in carrying a shotgun. He told Gibbs, "I'm going to show you how to use this gun[,] grandma, in case [you ever] need it." (Transcript p. 122). Gibbs told McWhorter to put the gun away. McWhorter placed the gun on the table and began loading and unloading it repeatedly. Eventually McWhorter took the gun out of the room.

Around this time, McWhorter confronted Deweese about her having intercourse with another man while she was pregnant with their baby. McWhorter asked for the return of the engagement ring that he had given Deweese. She took it off and handed it to him. He threw it on the floor and stepped on it. Gibbs picked the ring up, handed it to Deweese, and McWhorter asked for it again. Deweese gave it back and McWhorter threw it again, this time into a bedroom.

McWhorter went into the room where he had thrown the ring and stayed there for a while. During this time, Gibbs was sitting across the kitchen table from Deweese, facing her and McWhorter was standing behind Gibbs facing Deweese. Gibbs and Deweese were talking about whether McWhorter might try to kill himself. "[T]he next thing [Gibbs] knew, [she] heard a boom." (Tr. P. 126). Gibbs could see Deweese and quickly realized Deweese had been shot. Gibbs turned around and saw McWhorter standing close by. Gibbs asked what had happened and McWhorter said "oh no, oh no," and started screaming and carrying on. (Tr. P. 135). While Gibbs called 911, McWhorter said, "I didn't know there was a shell in it," and left the room. (Tr. P. 135).

Henry County Deputy Sheriff Ken Custer (Deputy Custer) was the first officer on the scene. He asked her what had happened and she stated that "[McWhorter] shot [Deweese]." (Tr. P. 168). Supporting officers then arrived. The officers found McWhorter in the house lying behind a baby crib and a shotgun lying inside the crib. After McWhorter was taken into custody, he said on two occasions, "I shot her." (Tr. pp. 174-176).

McWhorter v. State, 33A01-0701-CR-2, slip op. at 2-4 (Ind. Ct. App. Aug. 9, 2007), trans. denied.

The State charged McWhorter with Murder. At trial, McWhorter conceded that he had killed Deweese; the only contested issue was McWhorter's intent. McWhorter's defense was that he had accidently killed Deweese; however, at the close of the evidence the jury was instructed, without objection from defense counsel, on Voluntary Manslaughter and Reckless Homicide.[1]

On August 3, 2006, the jury returned the following verdict: "We, the jury, find the Defendant, Andrew W. McWhorter, not guilty of murder, but guilty of voluntary manslaughter, a Class A felony, as a lesser included offense of murder, a felony." (App. 20.)

---

[1] It is not clear from the post-conviction and trial record as to whether the State proffered instructions on lesser offenses or the trial court sua sponte drafted the combined instruction given. It is clear, however, that the jury did not receive such instruction upon McWhorter's initiative.

The following day, McWhorter was adjudicated a habitual offender. He was sentenced to forty-five years imprisonment, enhanced by thirty years due to his status as a habitual offender. His conviction was affirmed on direct appeal. See id.

On June 12, 2008, McWhorter filed a pro-se petition for post-conviction relief; his petition was amended on September 21, 2011. On November 18, 2011, the post-conviction court conducted an evidentiary hearing upon the allegation of ineffectiveness of trial counsel. On January 24, 2012, the post-conviction court entered its Findings of Fact, Conclusions of Law, and order denying McWhorter post-conviction relief. He now appeals.

**Discussion and Decision**

Post-Conviction Standard of Review

The petitioner in a post-conviction proceeding bears the burden of establishing the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Fisher v. State, 810 N.E.2d 674, 679 (Ind. 2004). When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. On review, we will not reverse the judgment of the post-conviction court unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. A post-conviction court's findings and judgment will be reversed only upon a showing of clear error, that which leaves us with a definite and firm conviction that a mistake has been made. Id. In this review, findings of fact are accepted unless they are clearly erroneous and no deference is accorded to conclusions of law. Id. The post-conviction court is the sole judge of the weight of the

4

evidence and the credibility of witnesses. Id.

<u>Effectiveness of Trial Counsel Standard of Review</u>

To establish a post-conviction claim alleging a violation of the Sixth Amendment right to effective assistance of counsel, a defendant must establish the two components set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). "First, a defendant must show that counsel's performance was deficient." <u>Id.</u> at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that "counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed to the defendant by the Sixth Amendment." <u>Id.</u> "Second, a defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial," that is, a trial where the result is reliable. <u>Id.</u> To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. <u>Id.</u> Further, we "strongly presume" that counsel provided adequate assistance and exercised reasonable professional judgment in all significant decisions. <u>McCary v. State</u>, 761 N.E.2d 389, 392 (Ind. 2002).

<u>Analysis</u>

McWhorter claims that his trial attorney was ineffective for failing to object to the Voluntary Manslaughter instruction given to the jury. We agree, as defense counsel

acquiesced to the giving of an instruction that (1) was not warranted by the evidence and (2) invited a compromise or unreliable verdict.

A defendant is entitled to have a jury properly instructed on an essential rule of law. Palmer v. State, 573 N.E.2d 880, 880 (Ind. 1991). In evaluating allegations of ineffectiveness in this regard, we look to the law available at the time of counsel's representation to determine whether a proper objection would have been sustained. Walker v. State, 843 N.E.2d 50, 59 (Ind. Ct. App. 2006), trans. denied.

Indiana's voluntary manslaughter statute provides:

(a) A person who knowingly or intentionally:
   (1) kills another human being; or
   (2) kills a fetus that has attained viability (as defined in IC 16-18-2-365);
while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon.

(b) The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.

Ind. Code § 35-42-1-3. "Sudden heat" is characterized as "anger, rage, resentment, or terror sufficient to obscure the reason of an ordinary person, preventing deliberation and premeditation, excluding malice, and rendering a person incapable of cool reflection." Dearman v. State, 743 N.E.2d 757, 760 (Ind. 2001). It is not an element of Voluntary Manslaughter. Boesch v. State, 778 N.E.2d 1276, 1279 (Ind. 2002). Rather, it is that which distinguishes Voluntary Manslaughter from Murder. Id. Although Voluntary Manslaughter is a lesser-included offense of Murder, it is an atypical example of a lesser-included offense.

6

Watts v. State, 885 N.E.2d 1228, 1231 (Ind. 2008). "In the case of voluntary manslaughter … sudden heat is a mitigating factor, not an element, that the State must prove in addition to the elements of murder. . . . [I]f there is no serious evidentiary dispute over sudden heat, it is error for a trial court to instruct a jury on voluntary manslaughter in addition to murder." [2] Id. at 1232 (emphasis in original).

The theory of McWhorter's defense was that an accidental shooting had occurred; defense counsel employed an "all or nothing" strategy seeking acquittal while realizing that the jury might instead convict McWhorter of Murder. The State did not initially charge McWhorter with Voluntary Manslaughter, and the trial court could properly have given a Voluntary Manslaughter instruction over McWhorter's objection only in the face of a serious evidentiary dispute as to whether the lesser offense was committed but the greater was not. See id. An unsupported Voluntary Manslaughter instruction deprives the defendant of the opportunity to pursue a legitimate trial strategy. Id. at 1233.

Here, any testimony that might have arguably approached evidence of "sudden heat" was elicited by the State from McWhorter's grandmother. She testified that McWhorter and Deweese had argued about Deweese having a sexual encounter with someone other than McWhorter while she was pregnant with McWhorter's child. McWhorter had expressed anger by stepping on and throwing Deweese's engagement ring. Anger alone is not sufficient to support an instruction on sudden heat; nor will words alone constitute sufficient

---

[2] Where a defendant has produced evidence of sudden heat, the State may not obtain a conviction for Murder, as opposed to Voluntary Manslaughter, unless the State has negated the evidence of sudden heat. "It bears repeating that only when evidence of sudden heat is presented does the State assume the burden of proving the absence of sudden heat to obtain a murder conviction." Massey v. State, 955 N.E.2d 247, 255 n.4 (2011) (emphasis in original).

provocation to warrant the instruction, particularly when the words at issue are not intentionally designed to provoke the defendant. Suprenant v. State, 925 N.E.2d 1280, 1282 (Ind. Ct. App. 2010), trans. denied. In Suprenant, a panel of this Court concluded that alleged provocation "comprised of words ending a relationship accompanied by preparations to leave" did not constitute "sudden heat" justifying a Voluntary Manslaughter instruction. 925 N.E.2d at 1284. In this case, there was merely a verbal admission. Although Deweese had admitted to being with a man other than McWhorter at some time in the past, there is no evidence that she offered any provocation whatsoever beyond "mere words." The Voluntary Manslaughter instruction lacked evidentiary support.

Moreover, the instruction prescribed sequential error for jury deliberation. Final Instruction No. 3 provided in relevant part:

> The Defendant is charged with murder. Voluntary manslaughter and reckless homicide are lesser included offenses in the charge of murder. If the State proves the Defendant guilty of murder, you need not consider the included crimes. However, if the State fails to prove the Defendant committed murder, you may consider whether the Defendant committed voluntary manslaughter or reckless homicide, which the Court will define for you.

> You must not find the Defendant guilty of more than one crime.

> The statute defining the offense of Murder which was in force at the time of the offense charged reads as follows:

> 35-42-1-1. Murder  A person who: knowingly … kills another human being … commits murder, a felony.

> To convict the Defendant, the State must have proved each of the following elements:
> 1. The Defendant
> 2. knowingly
> 3. killed

4.      Amanda L. Deweese

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of murder, a felony, as charged in the Information.

You may then consider any included crime.  The crime of voluntary manslaughter is included in the charged crime of murder.  Voluntary manslaughter is defined by statute as follows:

A person who knowingly … kills another human being while acting under sudden heat commits voluntary manslaughter, a Class B felony.  The offense is a Class A felony if it is committed by means of a deadly weapon.

Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter.  The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.

Before you may convict the Defendant, the state must have proved each of the following beyond a reasonable doubt:

1.      The Defendant
2.      knowingly
3.      killed
4.      Amanda Deweese
5.      and the Defendant was not acting under sudden heat
6.      and the Defendant killed by means of a deadly weapon.

If the State failed to prove each of elements 1 through 4 of the crime of murder beyond a reasonable doubt, you must find the Defendant not guilty of murder as charged.

If the State did prove each of elements 1 through 4 and element 6 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5, you may find the Defendant guilty of voluntary manslaughter, a Class A felony, a lesser included offense of murder.  If this is your finding but that the Defendant did not do so by means of a deadly weapon, you may find the Defendant guilty of voluntary manslaughter, a Class B felony, a lesser included offense of murder.  If the State proves the Defendant guilty of voluntary manslaughter, you need not consider the next included crime.

9

> If the State did prove each of elements 1 through 5 beyond a reasonable doubt, you may find the Defendant guilty of murder, a felony.

(App. 25-26.) (emphasis added.)

As such, the inartfully drafted instruction directed the jury to proceed, upon a failure of proof of one or more of the elements of Murder, to consider the lesser charge of Voluntary Manslaughter. However, the only element in dispute was intent. The jury was led by the sequential error of the instruction to, as a practical matter, find that McWhorter did not knowingly or intentionally kill Deweese, but that he did knowingly or intentionally kill Deweese while acting in sudden heat. That which does not exist cannot be mitigated. Counsel's failure to object was deficient performance.

We then must consider whether McWhorter was prejudiced such that the result of the trial was unreliable. The State asserts that a jury can acquit a defendant of Murder while convicting of Voluntary Manslaughter and has historically done so in many cases. We do not disagree. However, that result should ensue only upon proper instruction. The purpose of jury instruction is to inform the jury of the law applicable to the facts of a particular case. Williams v. State, 782 N.E.2d 1039, 1047 (Ind. Ct. App. 2003), trans. denied. Presumably, a jury acts in obedience to the trial court's instructions. See Chandler v. State, 581 N.E.2d 1233, 1237 (Ind. 1991).

Here, with intent the only element in dispute, the jury was advised that McWhorter could be convicted of Voluntary Manslaughter if less than all the elements of Murder were proven. Indeed, the jury was directed to proceed with consideration of the Voluntary Manslaughter charge only if there had been a failure of proof as to one or more of the

10

elements of Murder, which are also elements of Voluntary Manslaughter. A finding that less than all the elements of Murder were proven is, in these circumstances, necessarily a finding that the requisite intent was not established. We find that the instruction to proceed to consider Voluntary Manslaughter only upon a failure of proof of Murder invites inconsistency and renders the result of the trial unreliable. McWhorter was prejudiced in that he ultimately stood convicted of Voluntary Manslaughter, an offense not initially charged by the State and one upon which McWhorter did not proffer evidence or request instruction. The post-conviction court erred by not granting McWhorter relief upon his ineffectiveness of counsel claim.

McWhorter further argues that he may not be retried on the Voluntary Manslaughter charge because retrial would violate the double jeopardy principles of the United States Constitution. The Fifth Amendment guarantee against double jeopardy bars a defendant from being prosecuted for an offense after being acquitted for the same offense. Griffin v. State, 717 N.E.2d 73, 77 (Ind. 1999). The State responds that the jury is able to differentiate between offenses and, in finding McWhorter not guilty of Murder, acquitted him only of an "intentional killing" and did not intend to acquit him of Voluntary Manslaughter. State's Brief at 22.

To ascribe this intent to the jury, as the State urges, would require that we disregard the explanation of law given to the jury and render the instruction superfluous. The jury was directed to convict McWhorter of Murder only upon proof that (1) McWhorter (2) knowingly (3) killed (4) Amanda Deweese. (App. 25.) The jury was further instructed to proceed to

11

consideration of Voluntary Manslaughter only if one or more elements of Murder were not proven. However, the elements of Murder are also requisite elements of Voluntary Manslaughter. Because intent was the only contested element, the failure of proof was as to that element. The jury returned a joint verdict form, stating that McWhorter was not guilty of Murder but guilty of Voluntary Manslaughter.[3] This contemporaneous verdict form functioned as an acquittal of Voluntary Manslaughter, which requires the same intent as Murder.

McWhorter may not be retried on the charges of which he was acquitted. However, as he concedes, he may be retried on Reckless Homicide, the offense upon which the jury returned no verdict, and the elements of which differ from Murder and Voluntary Manslaughter.[4]

## Conclusion

McWhorter has established that he was denied the effective assistance of trial counsel. Accordingly, we reverse the denial of post-conviction relief. McWhorter may be retried on the charge of Reckless Homicide.

Reversed and remanded.

ROBB, C.J., and MATHIAS, J., concur.

---

[3] Thus, the deliberations had culminated in a verdict. We acknowledge that a jury is not prohibited by double jeopardy principles from revisiting or reconsidering its initial conclusion on a given issue during its deliberations but prior to rendering a verdict. Blueford v. Arkansas, 132 S. Ct. 2044, 2052 (2012). In Blueford, the jury had been instructed to proceed to consider a lesser-included offense if it had reasonable doubt of guilt of the greater charge, and the jury foreperson had reported to the court that the jury was unanimous against a finding of guilt on the greater offense. Id. at 2051. A report, but no verdict, having been rendered, the defendant could properly be retried after the declaration of a mistrial. Id.

[4] One commits Reckless Homicide when he recklessly kills another human being. Ind. Code § 35-42-1-5.