
FILED

Dec 26 2018, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael K. Ausbrook
Bloomington, Indiana

Maurer School of Law Federal Habeas
Project

Sarah Brown, Law Student
Ashley Moore, Law Student
Davin Shaw, Law Student
Michael Smyth, Law Student
Elmer Thoreson, Law Student

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrew A. Kobe
Section Chief, Criminal Appeals
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Andrew McWhorter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 26, 2018

Court of Appeals Case No.
33A01-1710-CR-2415

Appeal from the Henry Circuit
Court

The Honorable Bob Witham,
Judge

Trial Court Cause No.
33C01-0512-MR-1

**Bradford, Judge.**

# Case Summary

[1] In 2006, Andrew McWhorter was convicted of Class A felony voluntary manslaughter. That conviction was reversed after McWhorter sought post-conviction relief ("PCR") and the matter was remanded for retrial. Following retrial, he was again convicted of Class A felony voluntary manslaughter. McWhorter challenges this conviction, contending that (1) the trial court abused its discretion in admitting certain evidence, (2) his due process rights were violated during his prior trial, and (3) he was subjected to double jeopardy. Concluding that McWhorter's contentions are without merit, we affirm.

# Facts and Procedural History

[2] Upon considering McWhorter's first direct appeal, we set forth the relevant facts as follows:

> In December 2005, McWhorter, Amanda Deweese (Deweese), and their baby were living with Barbara Gibbs (Gibbs), McWhorter's grandmother. On December 2, 2005, inside Gibb's home, McWhorter shot Deweese in the head with a twelve-gauge shotgun at close range causing her death.
>
> Earlier that night, both Deweese and McWhorter visited Janis Floyd's (Floyd) home. Floyd observed Deweese acting nervous and crying, and observed that McWhorter smelled of alcohol. Meanwhile, Gibbs attended a Christmas show, arriving home about 10:45 p.m. Shortly after she arrived home McWhorter and Deweese came home as well. The two argued. Just as Floyd observed, Gibbs could tell that McWhorter was intoxicated.
>
> A few moments later, Deweese and Gibbs were sitting in the

kitchen and McWhorter came in carrying a shotgun. He told Gibbs, "I'm going to show you how to use this gun[,] grandma, in case [you ever] need it." (Transcript p. 122). Gibbs told McWhorter to put the gun away. McWhorter placed the gun on the table and began loading and unloading it repeatedly. Eventually McWhorter took the gun out of the room.

Around this time, McWhorter confronted Deweese about her having intercourse with another man while she was pregnant with their baby. McWhorter asked for the return of the engagement ring that he had given Deweese. She took it off and handed it to him. He threw it on the floor and stepped on it. Gibbs picked the ring up, handed it to Deweese, and McWhorter asked for it again. Deweese gave it back and McWhorter threw it again, this time into a bedroom.

McWhorter went into the room where he had thrown the ring and stayed there for a while. During this time, Gibbs was sitting across the kitchen table from Deweese, facing her and McWhorter was standing behind Gibbs facing Deweese. Gibbs and Deweese were talking about whether McWhorter might try to kill himself. "[T]he next thing [Gibbs] knew, [she] heard a boom." (Tr. p. 126). Gibbs could see Deweese and quickly realized Deweese had been shot. Gibbs turned around and saw McWhorter standing close by. Gibbs asked what had happened and McWhorter said "oh no, oh no", and started screaming and carrying on. (Tr. p. 135). While Gibbs called 911, McWhorter said, "I didn't know there was a shell in it," and left the room. (Tr. p. 135).

Henry County Deputy Sheriff Ken Custer (Deputy Custer) was the first officer on the scene. He asked her what had happened and she stated that "[McWhorter] shot [Deweese]." (Tr. p. 168). Supporting officers then arrived. The officers found McWhorter in the house lying behind a baby crib and a shotgun lying inside the crib. After McWhorter was taken into custody, he said on two occasions, "I shot her." (Tr. pp. 174-176).

*McWhorter v. State*, 33A01-0701-CR-2, slip op. at 2–4 (Ind. Ct. App. Aug. 9, 2007) ("*McWhorter I*"), *trans denied*.

[3] The State charged McWhorter with murder and alleged that he was a habitual offender. *Id.* at *4. Following trial, the jury found McWhorter guilty of Class A felony voluntary manslaughter and determined that he was indeed a habitual offender. *Id.* He was subsequently sentenced to "forty-five years for voluntary manslaughter, enhanced by thirty years as a Habitual Offender, for an aggregate sentence of seventy-five years." *Id.* His conviction was affirmed on appeal. *Id.* at *10.

[4] In 2008, McWhorter filed a PCR petition, alleging that his trial counsel was ineffective for failing to object to the voluntary manslaughter instruction that was given to the jury. On January 24, 2012, the post-conviction court denied McWhorter relief. A panel of this court reversed the denial of PCR, concluding that McWhorter had not received effective assistance of trial counsel and that he could only be retried on a charge of reckless homicide. *McWhorter v. State*, 970 N.E.2d 770, 779 (Ind. Ct. App. 2012) ("*McWhorter II*"), *transfer granted*, *opinion vacated*, 993 N.E.2d 1141 (Ind. 2013) ("*McWhorter III*").

[5] On transfer, the Indiana Supreme Court agreed that McWhorter was entitled to PCR and accordingly reversed the judgment of the post-conviction court, vacated McWhorter's conviction for voluntary manslaughter, and remanded for retrial. *McWhorter III*, 993 N.E.2d at 1148. The Indiana Supreme Court, however, concluded that "neither the prohibition of double jeopardy nor the

doctrine of collateral estoppel preclude retrial for reckless homicide or voluntary manslaughter." *Id.*

[6] On January 25, 2017, the State amended the charging information to include the charge of Class A felony voluntary manslaughter. By the time of McWhorter's retrial, Gibbs was deceased. The videotape of Gibbs's previous trial testimony was played for the jury, over McWhorter's objection. On June 28, 2017, the jury found McWhorter guilty of the Class A felony voluntary manslaughter charge and McWhorter admitted to being a habitual offender. He was subsequently sentenced to an aggregate seventy-five-year sentence.

# Discussion and Decision

## I. Admission of Evidence

[7] McWhorter contends that the trial court abused its discretion in admitting Barbara Gibbs's testimony from the first trial. "The decision to admit former testimony of an unavailable witness is within the sound discretion of the trial court" and we "will not reverse absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial." *Burns v. State*, 91 N.E.3d 635, 639 (Ind. Ct. App. 2018) (internal citation and quotation omitted).

> While prior testimony is hearsay, Indiana Rule of Evidence 804 provides an exception to its exclusion if the declarant is unavailable. To be considered unavailable, the declarant must be unable to testify because of death or a then-existing infirmity, physical illness, or mental illness. If a witness is determined

> unavailable, former testimony given at a trial, hearing, or lawful deposition is not excluded by the hearsay rule.

*Id.* (internal quotations omitted). The exception applies if the testimony "(A) was given [by] a witness at a trial, hearing or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had … an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Ind. Evidence Rule 804(b)(1).

[8] McWhorter concedes that Gibbs was unavailable at his second trial and that he had the opportunity to cross-examine her during his first trial. McWhorter claims, however, that he lacked a similar motive to develop Gibbs's testimony during the first trial because his defense was one of accident and he did not interject the issue of sudden heat.

[9] The plain language of Rule 804(b)(1) requires only that the opponent have had a "similar" motive to develop the former testimony. At McWhorter's trial on the charge of murder, Gibbs was the sole eyewitness testifying. McWhorter was highly incentivized to highlight any problem with her perception and recollection and to elicit from her any evidence that tended to negate or lessen his criminal culpability. Thus, we conclude that McWhorter had a similar motive in both his first and second trials. As such, we cannot say that the trial court abused its discretion by admitting Gibbs's former testimony.

# II. Due Process

[10] McWhorter also contends that his "right to federal due process was violated when he was convicted the first time of voluntary manslaughter as a Class A felony, a charge not included in the information in any way and for which neither the State nor McWhorter requested an instruction." Appellant's Br. pp. 29–30. That conviction, which resulted from McWhorter's first trial, was reversed. We agree with the State that McWhorter, in pursuing this particular issue on appeal, "has not alleged let alone shown that he was denied due process in his second trial." Appellee's Br. p. 14.

# III. Double Jeopardy

[11] McWhorter last contends that because he was acquitted of murder in his first trial, the prohibition against double jeopardy barred his retrial for voluntary manslaughter. We disagree. It is well-settled that "a defendant may be retried for a lesser offense, of which he was convicted at the first trial, after that conviction is reversed on appeal, and this is true even though the first trial also resulted in a verdict of acquittal on a greater offense." *Griffin v. State*, 717 N.E.2d 73, 78 (Ind. 1999) (citing *Price v. Georgia*, 398 U.S. 323, 326–27 (1970)).

[12] At the conclusion of McWhorter's first trial, the jury found him "not guilty of murder, but guilty of voluntary manslaughter, a Class A felony, as a lesser included offense of murder, a felony." *McWhorter III*, 993 N.E.2d at 1143. In *McWhorter III*, the Indiana Supreme Court found that while McWhorter was "acquitted of murder," "[i]t is clear that traditional federal double jeopardy

jurisprudence does not preclude retrying McWhorter for voluntary manslaughter." *Id.* at 1146. The Supreme Court additionally found that the doctrine of collateral estoppel, *i.e.*, issue preclusion, did not bar retrial of a voluntary manslaughter charge. *Id.* at 1147–48. Thus, the Indiana Supreme Court expressly directed that "neither the prohibition of double jeopardy nor the doctrine of collateral estoppel preclude retrial for reckless homicide or voluntary manslaughter."[1] *Id.* at 1148. Given the Indiana Supreme Court's decision in *McWhorter III*, we reject McWhorter's double jeopardy contention.[2]

[13] The judgment of the trial court is affirmed.

Brown, J., concurs.

Bailey, J, dissents with opinion.

---

[1] McWhorter's double jeopardy arguments have also been rejected by the federal courts. *See McWhorter v. Neal*, 1:14-cv-01098-WTL-DML (7th Cir. July 17, 2015), *cert. denied*.

[2] To the extent that *McWhorter III* only considered McWhorter's arguments in the context of the Fifth Amendment to the United States Constitution, we conclude that the principles relied on by the Indiana Supreme Court apply equally to Article I, § 14, of the Indiana Constitution. Thus, for the same reasons as are stated above, we further conclude that McWhorter's double jeopardy claim fails under the Indiana Constitution.

# IN THE
# COURT OF APPEALS OF INDIANA

| Andrew McWhorter, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 33A01-1710-CR-2415 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff.* | |

**Bailey, Judge, dissenting.**

[14] I fully agree with my colleagues that "a defendant may be retried for a lesser offense, of which he was convicted at the first trial, after that conviction is reversed on appeal, and this is true even though the first trial also resulted in a verdict of acquittal on a greater offense." *Griffin v. State*, 717 N.E.2d 73, 78 (Ind. 1999). However, voluntary manslaughter, as a standalone charge, is not a "lesser" offense of murder.[3] Our Indiana Supreme Court has made this clear

---

[3] In 2005, when McWhorter killed Deweese, Indiana Code Section 35-42-1-1 defined murder as the knowing or intentional killing of another human being. Indiana Code Section 35-42-1-3 provided that "a person who knowingly or intentionally (1) kills another human being … while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon." Subsection (b) stated: "The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter."

when, after *McWhorter III* was decided, the Court issued its opinion in *Brantley v. State*, 91 N.E.3d 566 (Ind. 2018). The Court addressed the availability of a standalone charge of voluntary manslaughter and the burden of proof in such an action. Our Supreme Court considered "whether voluntary manslaughter may be brought as a standalone charge" by the State and found that it could. *Id.* at 570-71. Turning to the merits, the Court made three specific observations:

> One, sudden heat is a mitigating factor, not an element. … Two, there must be some evidence that a defendant acted in sudden heat before a jury may consider voluntary manslaughter. As such, to the extent the State argues it can concede the existence of sudden heat without evidence of such in the record, we disagree. Three, even when voluntary manslaughter is the lead charge, the State must prove the elements of murder: the knowing or intentional killing of another human being.

*Id.* at 572. In sum, the crime of voluntary manslaughter does not include a unique element of sudden heat.[4] The crime to be alleged and proven in a standalone charge of voluntary manslaughter is murder, albeit a mitigated murder, i.e., a diminished mens rea. Yet because sudden heat is not an element, voluntary manslaughter is lesser only in the degree of punishment not proof.

---

Pursuant to Indiana Code Section 35-42-1-5, a person committed reckless homicide when he recklessly killed another human being.

[4] I acknowledge that our supreme court has previously described voluntary manslaughter as an inherently included lesser offense of murder, with a distinguishing element of sudden heat. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004).

As an intermediate appellate court, we are bound to follow Indiana Supreme Court precedent and will not declare its decision to be invalid. *Gill v. Gill*, 72 N.E.3d 945, 949 (Ind. Ct. App. 2017). The *Brantley* Court clarified that, "even when voluntary manslaughter is the lead charge, the State must prove the elements of murder." 91 N.E.3d at 572. But when McWhorter was tried on the standalone charge of voluntary manslaughter, he had already been tried for murder. *See McWhorter I*, *McWhorter II*, and *McWhorter III*. Upon that charge, "McWhorter was acquitted of murder[.]" *McWhorter III*, 993 N.E.2d at 1146. When the State pursued its standalone charge, McWhorter was again required to defend against the elements of murder. This is a classic example of double jeopardy. An explicit acquittal terminates jeopardy on the acquitted charge and does so "notwithstanding any legal error." *Evans v. Michigan*, 568 U.S. 313, 328 (2013). To the extent that *McWhorter III* and *Brantley* may be seen as conflicting, we should follow the latter guidance of our supreme court specific to a standalone charge.

Effectively, these decisions suggest that there is a lesser or diminished capacity below knowing and intentional because of the emotional response to a sudden event, i.e., sudden heat. This "sudden heat" arises from provocation which is absent in this case. Yet, given the framework presented to us, "sudden heat" is not an element of murder, rather it is something in addition to murder.

Finally, I observe that the record here is devoid of evidence of "sudden heat" as that has been defined by our Indiana Supreme Court. Sudden heat exists "when a defendant is 'provoked by anger, rage, resentment, or terror, to a

degree sufficient to obscure the reason of an ordinary person, prevent deliberation and premeditation, and render the defendant incapable of cool reflection.'" *Brantley*, 91 N.E.3d at 572 (quoting *Isom v. State*, 31 N.E.3d 469, 486 (Ind. 2015)). Here, McWhorter was simply not "provoked." *See id.*

[18] The prosecutor urged the jury to consider McWhorter's likely perception that the relationship was ending from Deweese's silence in the face of McWhorter's accusations and his stomping of the engagement ring. Clearly, the record indicates that McWhorter was agitated after dwelling upon events that had apparently happened many months earlier, and he may well have been facing the prospect of a breakup. But even if Deweese's affair constituted "sudden heat," the existence of "sudden heat" can be negated by a showing that a sufficient "cooling off period" elapsed between provocation and homicide. *Morrison v. State*, 588 N.E.2d 527, 531-32 (Ind. Ct. App. 1992). Here, the conduct which Deweese apparently admitted was long past. Too, sudden heat is not shown by anger alone or by mere words. *Suprenaut v. State*, 925 N.E.2d 1280, 1282 (Ind. Ct. App. 2010), *trans. denied.* In my view, Deweese's mere silence cannot conceivably be considered provocation.

[19] McWhorter admits that he killed a person and that he acted recklessly. For an act of voluntary manslaughter, coupled with enhancements for past conduct, he received a prison sentence of seventy-five years. I would reverse and remand with instructions to enter judgment on criminal recklessness and conduct a new sentencing hearing. On remand, while McWhorter is subject to a lesser

sentence for criminal recklessness, this sentence is nevertheless subject to enhancement.[5]

---

[5] McWhorter does not contest the jury's determination that he is a habitual offender.