Facts and Procedural History
[2] Upon considering McWhorter's first direct appeal, we set forth the relevant facts as follows:
In December 2005, McWhorter, Amanda Deweese (Deweese), and their baby were living with Barbara Gibbs (Gibbs), McWhorter's grandmother. On December 2, 2005, inside Gibb's home, McWhorter shot Deweese in the head with a twelve-gauge shotgun at close range causing her death.
Earlier that night, both Deweese and McWhorter visited Janis Floyd's (Floyd) home. Floyd observed Deweese acting nervous and crying, and observed that McWhorter smelled of alcohol. Meanwhile, Gibbs attended a Christmas show, arriving home about 10:45 p.m. Shortly after she arrived home McWhorter and Deweese came home as well. The two argued. Just as Floyd observed, Gibbs could tell that McWhorter was intoxicated.
A few moments later, Deweese and Gibbs were sitting in the kitchen and McWhorter came in carrying a shotgun. He told Gibbs, "I'm going to show you how to use this gun[,] grandma, in case [you ever] need it." (Transcript p. 122). Gibbs told McWhorter to put the gun away. McWhorter placed the gun on the table and began loading and unloading it repeatedly. Eventually McWhorter took the gun out of the room.
Around this time, McWhorter confronted Deweese about her having intercourse with another man while she was pregnant with their baby. McWhorter asked for the return of the engagement ring that he had given Deweese. She took it off and handed it to him. He threw it on the floor and stepped on it. Gibbs picked the ring up, handed it to *617 Deweese, and McWhorter asked for it again. Deweese gave it back and McWhorter threw it again, this time into a bedroom.
McWhorter went into the room where he had thrown the ring and stayed there for a while. During this time, Gibbs was sitting across the kitchen table from Deweese, facing her and McWhorter was standing behind Gibbs facing Deweese. Gibbs and Deweese were talking about whether McWhorter might try to kill himself. "[T]he next thing [Gibbs] knew, [she] heard a boom." (Tr. p. 126). Gibbs could see Deweese and quickly realized Deweese had been shot. Gibbs turned around and saw McWhorter standing close by. Gibbs asked what had happened and McWhorter said "oh no, oh no", and started screaming and carrying on. (Tr. p. 135). While Gibbs called 911, McWhorter said, "I didn't know there was a shell in it," and left the room. (Tr. p. 135).
Henry County Deputy Sheriff Ken Custer (Deputy Custer) was the first officer on the scene. He asked her what had happened and she stated that "[McWhorter] shot [Deweese]." (Tr. p. 168). Supporting officers then arrived. The officers found McWhorter in the house lying behind a baby crib and a shotgun lying inside the crib. After McWhorter was taken into custody, he said on two occasions, "I shot her." (Tr. pp. 174-176).
McWhorter v. State , 33A01-0701-CR-2, slip op. at 2-4, 2007 WL 2264712 (Ind. Ct. App. Aug. 9, 2007) (" McWhorter I "), trans denied .
[3] The State charged McWhorter with murder and alleged that he was a habitual offender. Id. at *4. Following trial, the jury found McWhorter guilty of Class A felony voluntary manslaughter and determined that he was indeed a habitual offender. Id. He was subsequently sentenced to "forty-five years for voluntary manslaughter, enhanced by thirty years as a Habitual Offender, for an aggregate sentence of seventy-five years." Id. His conviction was affirmed on appeal. Id. at *10.
[4] In 2008, McWhorter filed a PCR petition, alleging that his trial counsel was ineffective for failing to object to the voluntary manslaughter instruction that was given to the jury. On January 24, 2012, the post-conviction court denied McWhorter relief. A panel of this court reversed the denial of PCR, concluding that McWhorter had not received effective assistance of trial counsel and that he could only be retried on a charge of reckless homicide. McWhorter v. State , 970 N.E.2d 770, 779 (Ind. Ct. App. 2012) (" McWhorter II "), transfer granted , opinion vacated , 993 N.E.2d 1141 (Ind. 2013) (" McWhorter III ").
[5] On transfer, the Indiana Supreme Court agreed that McWhorter was entitled to PCR and accordingly reversed the judgment of the post-conviction court, vacated McWhorter's conviction for voluntary manslaughter, and remanded for retrial. McWhorter III , 993 N.E.2d at 1148. The Indiana Supreme Court, however, concluded that "neither the prohibition of double jeopardy nor the doctrine of collateral estoppel preclude retrial for reckless homicide or voluntary manslaughter." Id.
[6] On January 25, 2017, the State amended the charging information to include the charge of Class A felony voluntary manslaughter. By the time of McWhorter's retrial, Gibbs was deceased. The videotape of Gibbs's previous trial testimony was played for the jury, over McWhorter's objection. On June 28, 2017, the jury found McWhorter guilty of the Class A felony voluntary manslaughter charge and McWhorter admitted to being a habitual offender. He was subsequently *618 sentenced to an aggregate seventy-five-year sentence.
Discussion and Decision
I. Admission of Evidence
[7] McWhorter contends that the trial court abused its discretion in admitting Barbara Gibbs's testimony from the first trial. "The decision to admit former testimony of an unavailable witness is within the sound discretion of the trial court" and we "will not reverse absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial." Burns v. State , 91 N.E.3d 635, 639 (Ind. Ct. App. 2018) (internal citation and quotation omitted).
While prior testimony is hearsay, Indiana Rule of Evidence 804 provides an exception to its exclusion if the declarant is unavailable. To be considered unavailable, the declarant must be unable to testify because of death or a then-existing infirmity, physical illness, or mental illness. If a witness is determined unavailable, former testimony given at a trial, hearing, or lawful deposition is not excluded by the hearsay rule.
Id. (internal quotations omitted). The exception applies if the testimony "(A) was given [by] a witness at a trial, hearing or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had ... an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Ind. Evidence Rule 804(b)(1).
[8] McWhorter concedes that Gibbs was unavailable at his second trial and that he had the opportunity to cross-examine her during his first trial. McWhorter claims, however, that he lacked a similar motive to develop Gibbs's testimony during the first trial because his defense was one of accident and he did not interject the issue of sudden heat.
[9] The plain language of Rule 804(b)(1) requires only that the opponent have had a "similar" motive to develop the former testimony. At McWhorter's trial on the charge of murder, Gibbs was the sole eyewitness testifying. McWhorter was highly incentivized to highlight any problem with her perception and recollection and to elicit from her any evidence that tended to negate or lessen his criminal culpability. Thus, we conclude that McWhorter had a similar motive in both his first and second trials. As such, we cannot say that the trial court abused its discretion by admitting Gibbs's former testimony.
II. Due Process
[10] McWhorter also contends that his "right to federal due process was violated when he was convicted the first time of voluntary manslaughter as a Class A felony, a charge not included in the information in any way and for which neither the State nor McWhorter requested an instruction." Appellant's Br. pp. 29-30. That conviction, which resulted from McWhorter's first trial, was reversed. We agree with the State that McWhorter, in pursuing this particular issue on appeal, "has not alleged let alone shown that he was denied due process in his second trial." Appellee's Br. p. 14.
III. Double Jeopardy
[11] McWhorter last contends that because he was acquitted of murder in his first trial, the prohibition against double jeopardy barred his retrial for voluntary manslaughter. We disagree. It is well-settled that "a defendant may be retried for a lesser offense, of which he was convicted at the first trial, after that conviction is reversed on appeal, and this is true even though the first trial also resulted in a verdict of acquittal on a greater offense."
*619 Griffin v. State , 717 N.E.2d 73, 78 (Ind. 1999) (citing Price v. Georgia , 398 U.S. 323, 326-27, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) ).
[12] At the conclusion of McWhorter's first trial, the jury found him "not guilty of murder, but guilty of voluntary manslaughter, a Class A felony, as a lesser included offense of murder, a felony." McWhorter III , 993 N.E.2d at 1143. In McWhorter III , the Indiana Supreme Court found that while McWhorter was "acquitted of murder," "[i]t is clear that traditional federal double jeopardy jurisprudence does not preclude retrying McWhorter for voluntary manslaughter." Id. at 1146. The Supreme Court additionally found that the doctrine of collateral estoppel, i.e. , issue preclusion, did not bar retrial of a voluntary manslaughter charge. Id. at 1147-48. Thus, the Indiana Supreme Court expressly directed that "neither the prohibition of double jeopardy nor the doctrine of collateral estoppel preclude retrial for reckless homicide or voluntary manslaughter."[1] Id. at 1148. Given the Indiana Supreme Court's decision in McWhorter III , we reject McWhorter's double jeopardy contention.[2]
[13] The judgment of the trial court is affirmed.
Brown, J., concurs.
Bailey, J, dissents with opinion.

McWhorter's double jeopardy arguments have also been rejected by the federal courts. See McWhorter v. Neal , 1:14-cv-01098-WTL-DML (7th Cir. July 17, 2015), cert. denied .

To the extent that McWhorter III only considered McWhorter's arguments in the context of the Fifth Amendment to the United States Constitution, we conclude that the principles relied on by the Indiana Supreme Court apply equally to Article I, § 14, of the Indiana Constitution. Thus, for the same reasons as are stated above, we further conclude that McWhorter's double jeopardy claim fails under the Indiana Constitution.