FILED

Feb 12 2018, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph Ira Burns,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 12, 2018

Court of Appeals Case No.
79A04-1705-CR-1005

Appeal from the Tippecanoe
Superior Court

The Honorable Steven P. Meyer,
Judge

Trial Court Cause No.
79D02-1608-F2-22

**May, Judge.**

[1] Joseph Ira Burns appeals his convictions of Level 2 felony conspiracy to commit burglary;[1] Level 2 felony burglary while armed with a deadly weapon;[2] two counts of Level 6 felony criminal confinement while armed with a deadly weapon;[3] and Level 3 felony robbery resulting in bodily injury.[4] He presents two issues for review, which we restate as:

1) Whether the trial court erred when it admitted a recorded deposition from a witness; and

2) Whether sufficient evidence was presented to support his conviction of Level 2 felony burglary while armed with a deadly weapon.

[2] We affirm.

# Facts and Procedural History

[3] On August 19, 2016, Burns, his brother Steven, and Adam Smith met at Smith's house and decided to steal money from Jerry and Linda Mathews (collectively, "the Mathews"). Steven had seen Jerry carrying large amounts of

---

[1] Ind. Code §§ 35-43-2-1 (2014) & 35-41-5-2 (2014).

[2] Ind. Code § 35-43-2-1(3)(A) (2014).

[3] Ind. Code § 35-42-3-3(2)(A) (2014).

[4] Ind. Code § 35-42-5-1(2014).

cash to pay for automobile repairs. The Mathews' house was only a few blocks from Smith's.

[4] On the way to the Matthews' house, Steven stopped to retrieve two guns and gave one to Burns. Each man wore a bandana mask of a different color. Burns wore a green mask, Steven a red one, and Adam a black one. They broke into the Mathews' home via an unlocked window. They entered the Mathews' bedroom, turned on the light, and began yelling at Jerry to give them his money.

[5] Jerry got out of bed denying the presence of money in the house but Steven hit him in the head with his gun and knocked him to the floor. Jerry's head was bleeding. Linda remained in bed with Smith near her. Burns remained in the doorway with his pistol pointed in Jerry's direction. Steven threatened to kill Jerry and have Smith rape Linda.

[6] Steven and Burns dragged Jerry to another room and retrieved his wallet. Smith stayed with Linda. Steven took all the money from Jerry's wallet, including some two-dollar bills. He also stole Jerry's rings and a watch. Steven and Burns returned Jerry to his bedroom. Steven informed the couple he would kill them if they left the bed. All three men then exited the home.

[7] Unbeknownst to the burglars, the Mathews rented their basement to Avonne Smith.[5] Avonne "heard Jerry state to somebody that was in the house, [']I already told you, you have all the money I have in my wallet.[']" (Tr. Vol. II at 88.) Avonne called 911 and reported the burglary. Within ten minutes, the police arrived at the Mathews' home.

[8] Lafayette Police Department Officer Cassandra Leuck responded to the dispatch. En route to the Mathews' home, she saw three men running from the area. The men matched the description of the suspects. Officer Leuck apprehended Smith but Burns and Steven eluded her.

[9] Around 2:30 or 3:00 a.m., Burns arrived at John Smalley's home and requested a shower. Shortly thereafter, Steven also arrived at Smalley's home. Steven had some watches and rings in his pockets. Steven told Smalley he had stolen the items from Jerry Mathews. Referring to the gun as "a stinger," Steven asked Burns "what he had done with the gun that he had." (Tr. Vol. III at 9.) Burns was not sure but he thought he had left it along the street.

[10] Lafayette SWAT team arrived at the Smalley home later that morning and arrested Steven and Burns. They retrieved the rings, the watches and over $3000 in cash. No one in the home claimed the cash belonged to them. The

---

[5] Ms. Smith is no relation to Adam Smith. (*See* Tr. Vol. II at 90.)

police also retrieved a sweatshirt with blood on it. The DNA from the blood matched Jerry's DNA.

[11] The State charged Burns with Level 2 felony conspiracy to commit burglary; Level 2 felony burglary while armed with a deadly weapon; two counts of Level 3 felony criminal confinement while armed with a deadly weapon; Level 3 felony robbery while armed with a deadly weapon;[6] Level 3 felony robbery resulting in bodily injury; two counts of Level 5 felony intimidation while drawing or using a deadly weapon;[7] Level 5 felony battery with a deadly weapon;[8] Class A misdemeanor theft;[9] Level 6 felony pointing a firearm at another person;[10] Class A misdemeanor carrying a handgun without a license;[11] Level 5 felony carrying handgun while having a prior felony conviction;[12] and an enhancement for using a firearm during the commission of criminal confinement.[13]

[12] Prior to trial, the Mathews moved to Florida. Linda was diagnosed with a malignant brain tumor. On February 17, 2017, the State filed a notice of

---

[6] Ind. Code § 35-42-5-1 (2014).

[7] Ind. Code § 35-45-2-1(b)(2)(A) (2014).

[8] Ind. Code § 35-42-2-1(g)(2) (2016).

[9] Ind. Code § 35-43-4-2 (2014).

[10] Ind. Code § 35-47-4-3 (2014).

[11] Ind. Code § 35-47-2-1 (2014).

[12] Ind. Code § 35-47-2-1(e)(2)(B) (2014).

[13] Ind. Code § 35-50-2-11 (2016).

testimonial video deposition because Linda was unable to travel back to Indiana. Linda's physician attested to her illness, the requirement for her to stay close to her treatment facility, and the danger to her health if she traveled or was in large groups of people. Burns objected to the notice as unreasonable and violative of his Sixth Amendment right to confrontation. Burns requested he be transported to attend the deposition in Florida.

[13] The arrangements for the deposition included two-way video-conferencing so Burns, from the jail, could see Linda and be seen by Linda. Burns' counsel was invited to attend in person. The trial court denied Burns' objection and denied his request to attend. On February 27, 2017, the parties conducted a deposition in Florida. The State was present in person. Burns, his attorney, and the trial court judge were present via videoconferencing call. Prior to the deposition, the trial court conducted a competency hearing for Linda. It found "the witness is competent to provide testimony for the purposes of this deposition." (App. Vol. II at 118.)

[14] On March 10, 2017, at trial, the court deemed Linda unavailable and allowed her deposition to be entered into evidence. Burns again objected on the same grounds, but his objection was denied. A redacted version of the deposition video was played for the jury.

[15] The jury found Burns not guilty of Level 6 felony pointing a firearm at another and Class A misdemeanor carrying a handgun without a license but returned a guilty verdict on all other charges. The State dismissed the Level 5 felony

carrying a handgun while having a prior felony conviction and the enhancement.[14] Due to double jeopardy concerns, the trial court reduced both Level 3 felony criminal confinement charges to Level 6 felonies; merged the Level 3 felony robbery while armed with a deadly weapon, the Level 5 battery with a deadly weapon and the Class A misdemeanor theft charges with the Level 3 felony robbery resulting in bodily injury; and merged the intimidation charges into the criminal confinement charges.

# Discussion and Decision[15]

## Admission of Evidence

### *Rules of Evidence*

[16] Burns contends Linda's deposition should not have been admitted into evidence during trial because the trial court erred in deeming her "unavailable" for trial such that her deposition was admissible under an exception to the hearsay rule. *See* Ind. Evidence Rule 804. He argues that because Linda testified she was

---

[14] These charges were not sent to the jury.

[15] We note that, in closing arguments, defense counsel conceded Burns was guilty of conspiracy to commit burglary, robbery resulting in bodily injury, and theft. (*See* Tr. Vol. III at 98-99 (theft), 100 (robbery), 102 (conspiracy).) Neither his appellate brief nor the State's brief acknowledges this concession; thus, we consider his appeal as including all convictions as they may be affected by the trial court's rulings. *See, e.g., Ward v. State*, 810 N.E.2d 1042 (Ind. 2004) (although Ward conceded responsibility for the victim's death, ancillary decisions still reviewed overall as they pertain to all convictions), *reh'g denied, cert. denied* 546 U.S. 926 (2005).

able to do housework, she was able to travel from Florida to Indiana to testify at trial.

[17] The decision to admit former testimony of an unavailable witness is within the sound discretion of the trial court. *Rhea v. State*, 814 N.E.2d 1031, 1033 (Ind. Ct. App. 2004), *trans. denied.* We will not reverse "absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial." *Guy v. State*, 755 N.E.2d 248, 252 (Ind. Ct. App. 2001), *reh'g denied, trans. denied*. We "will only consider the evidence in favor of the trial court's ruling and unrefuted evidence in the defendant's favor." *Id*.

[18] While prior testimony is hearsay, Indiana Rule of Evidence 804 provides an exception to its exclusion if the declarant is unavailable. To be considered unavailable, the declarant must be unable to testify "because of death or a then-existing infirmity, physical illness, or mental illness[.]" Evid. R. 804(a)(4) (2014). If a witness is determined unavailable, former testimony given "at a trial, hearing, or lawful deposition" is not excluded by the hearsay rule. Evid. R. 804(b)(1)(A) (2014). When admitting such testimony, the opponent must have had an opportunity to cross-examine the deponent. *Thomas v. State*, 966 N.E.2d 1267, 1270 (Ind. Ct. App. 2012), *trans. denied.*

[19] Herein, Linda was diagnosed with a malignant brain tumor. Her doctor submitted documentation regarding her diagnosis and treatment. She was involved in clinical trials requiring her to have therapy six days per week without interruptions to avoid any detrimental response. Additionally, her

doctor stated "[s]he needs to stay close to the Cancer Center so that she can be closely followed and observed for any adverse events." (App. Vol. II at 86.) The doctor also advised Linda's immune system was compromised and she would "be at an increased risk for infection" if she did not avoid public places. (*Id.* at 149.)

[20] Due to these circumstances, we cannot say the trial court abused its discretion in finding Linda unavailable. The record demonstrates Linda lived out of state, was diagnosed with a malignant brain tumor, was participating in a clinical trial, was unable to be in public places, and required close observation by her doctors. Prior to the deposition, the trial court conducted a competency hearing and was able to observe Linda firsthand. Burns' allegations that Linda's ability to do some housework equates to her availability to testify in person in Indiana does not convince us the trial court erred when it determined she was unable to travel for several days to another state to testify.

## Confrontation Clause

[21] The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" Article I, Section 13 of the Indiana Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall have the right . . . to meet the witnesses face to face[.]" Burns argues he was denied the right to face-to-face confrontation when the trial court allowed Linda's deposition to be admitted as evidence.

[22] The State and the trial court endeavored to take all necessary care to preserve Burns' right to confront his accuser face-to-face. Regardless, Linda's testimony was cumulative of other evidence. Linda testified as to the attack, the attackers' clothing, what was said and done while the attackers were in the bedroom, and how she felt during the incident. Except the information as to how she felt during the attack, Jerry and Smith testified similarly. As most of Linda's testimony was cumulative of other evidence, any error was harmless. *See Berry v. State*, 725 N.E.2d 939, 943 (Ind. Ct. App. 2000).

[23] Notwithstanding the fact any error would be harmless, we find no violation of Burns' right to confront his accuser. "The Sixth Amendment right of confrontation requires that a defendant be afforded an opportunity to conduct a full, adequate, and effective cross-examination." *Belser v. State*, 727 N.E.2d 457, 463 (Ind. Ct. App. 2000), *trans. denied*. "[T]he Indiana Constitution guarantees a defendant the right to face-to-face confrontation with witnesses against him." *Id.* Here, Linda's deposition was arranged so that Burns' attorney could attend in Florida (although it appears from the record he appeared via teleconference), Burns attended via two-way video that allowed him to see Linda and Linda to see him, and Burns was able to communicate with his attorney. Burns' attorney was able to fully cross-examine Linda, and the two-way video arrangement allowed Burns to participate face-to-face. *See Brady v. State*, 575 N.E.2d 981, 989 (Ind. 1991).

[24] Prior to taking the deposition, the State filed a "Notice of Testimonial Video Deposition" indicating Linda's deposition may be used for testimony. (App.

Vol. II at 70.)  In his objection to the taking of the deposition, Burns acknowledged Linda's deposition might be used at trial when he stated he "believes the State's purpose for taking the testimonial video deposition of Linda Mathews is for use at the trial of Joseph Ira Burns[.]" (*Id.* at 74.)  Thus, Burns was on notice to conduct the cross-examination with a similar motive as he would use at trial and he appears to have done so.  *See Morgan v. State*, 903 N.E.2d 1010, 1016 (Ind. Ct. App. 2009) (if defendant had similar motive to develop testimony during deposition as for trial, the deposition is admissible at trial), *trans. denied*.  The trial court did not err when it allowed Linda's deposition to be entered into evidence at trial.

## Sufficiency of Evidence

[25]   Burns contends the State did not provide sufficient evidence to prove he committed burglary while armed with a deadly weapon.  Specifically, he takes issue with the fact the charging information says Burns and his cohorts had entered the Matthews' home with the intent to commit a felony "while armed with a deadly weapon, *to wit: a handgun(s)*[.]" (App. Vol. II at 17) (emphasis added).  He asserts the State did not prove the weapons were handguns.

[26]   When reviewing sufficiency of the evidence in support of a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment.  *Binkley v. State,* 654 N.E.2d 736, 737 (Ind. 2007), *reh'g denied.*  The decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the fact-finder.  *Id.*  We do not assess the

credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Drane v. State,* 867 N.E.2d 144, 146 (Ind. 2007). Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.* at 147.

[27] The definition of burglary while armed with a deadly weapon is:

> A person who breaks and enters the building or structure of another person, with intent to commit a felony or theft in it, commits burglary, a Level 5 felony. However, the offense is:
>
> * * * * *
>
> (3) a Level 2 felony if it:
>
> (A) is committed while armed with a deadly weapon . . . .

Ind. Code § 35-43-2-1 (2014). The State charged Burns with being armed with a handgun specifically. A handgun, as defined in the jury instructions given, is "any weapon that is capable of or designed to or that may readily be converted to expel a projectile by means of an explosion." (App. Vol. II at 209.) Burns asserts the State did not present sufficient evidence to prove he used a real handgun rather than a "airsoft gun, or for that matter, a black squirt gun[.]" (Appellant's Br. at 24.) He claims that such a lack of proof creates a fatal

variance between the charging information and the proof presented at trial. He cites *Miller v. State*, 616 N.E.2d 750, 754 (Ind. Ct. App. 1993), to support this claim.

[28] *Miller* is distinguishable. The pellet gun in *Miller* was seized by the police and it was known to be a pellet gun; however, the State specifically charged Miller as being armed with a handgun. Because the weapon was known, and thus proven, to not be a handgun, we held there was a fatal variance between the charging information and the evidence presented at trial. That is not the case here. The weapons brandished by Burns and Steven were not recovered by the police, and no one with firsthand knowledge testified as to their authenticity or lack thereof.

[29] Jerry testified the men wearing the red and the green masks had guns. The man in the red mask was "[p]ointing it at [him.]" (Tr. Vol. II at 94.) The "man with the green mask . . . was pointing it at, pointing at us." (*Id.*) Linda testified that the "ones with the guns wore the red and the green [masks]." (App. Vol. II at 123.) She said the ones with the guns "were closer to [Jerry's] side of the bed." (*Id.* at 124.) Smith testified Steven got "black handguns" when they stopped on the way to the Mathews' house. (Tr. Vol. II at 212.) He stated Steven gave one to Burns. Although he admitted he did not handle the guns, Smith thought "[t]hey looked real." (*Id.* at 225.)

[30] All three witnesses who saw the guns testified they were real and were controlled by Steven and Burns. All three acknowledged they had not

inspected the weapons. Although the handguns were not found by the police, and none of the witnesses could testify regarding their examination of the guns and their authenticity, the jury could reasonably infer Burns possessed a gun. *See D.B. v. State*, 658 N.E.2d 595, 595 (Ind. 1995) (evidence was sufficient for the jury to infer the gun was loaded even though the gun was not recovered and no evidence was presented that it was loaded). Burns' arguments to the contrary are a request that we reweigh the evidence, which we cannot do. *See Drane*, 867 N.E.2d at 146 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

# Conclusion

As the trial court did not err when it determined Linda was "unavailable" and entered her deposition testimony as evidence, and as the State provided sufficient evidence to allow the jury to infer Burns used a handgun during the burglary, we affirm Burns' convictions.

Affirmed.

Vaidik, C.J., and Altice, J., concur.