## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 15 2019, 6:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

John Kindley
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Evan Michael Sapp,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 15, 2019

Court of Appeals Case No.
18A-CR-2796

Appeal from the Vigo Superior
Court

The Honorable Michael R. Rader,
Judge

Trial Court Cause No.
84D05-1806-F4-2057

**Altice, Judge.**

# Case Summary

Evan Michael Sapp appeals his conviction, following a jury trial, for Level 4 felony unlawful possession of a firearm by a serious violent felon. He asserts that the State presented insufficient evidence that he possessed a firearm.

We affirm.

# Facts & Procedural History

On June 13, 2018 at approximately 7:30 a.m., a 911 caller reported that a man was asleep or unconscious in the driver's seat of a running Dodge Ram pickup truck parked in an alley behind her house and that she had tried to wake him, but he was unresponsive. First to arrive at the scene were three Terre Haute firefighters and paramedics, including Matthew Osborne. The driver's side window of the pickup truck was about halfway down, and the driver's head was slumped over and resting on the top of the steering wheel. Osborne approached the vehicle, and while about ten feet away, Osborne yelled to the driver, later identified as Sapp, asking if he was alright. Osborne wondered if the person had suffered a stroke or some other medical emergency. Sapp immediately woke up and replied, "yah, yah I'm okay." *Transcript Vol. II* at 221. Given that initially he had been unresponsive to the homeowner, Osborne asked Sapp if he would step out to make sure everything was okay, and Sapp replied that he lived a couple blocks away and was going to drive home. During this time, Osborne noticed that Sapp was sweating and had "pin-point" pupils, which

suggested to Osborne that Sapp might be under a possible narcotics influence. *Id.* at 222.

[4]     While standing about a foot and a half away from the driver's side window, Osborne observed a pistol wedged between the driver's seat and the center console with the handle pointing up. Part of the barrel was tucked down and out of sight but the rest was viewable above the seat. According to Osborne, the handle was brown and white, and the barrel was black. Osborne believed it was a small caliber revolver, between .22 and .38 caliber, that was "hammer driven." *Id*. at 231.

[5]     Osborne asked Sapp several times to step out of the vehicle so Osborne could assess any injuries or medical issues that Sapp may have been experiencing, and given the presence of a firearm, Osborne was also concerned for his own safety. Sapp "continually stated no, no, I'm okay" and that he was "going to go home." *Id*. at 224. When another firefighter suggested, "[t]he police ar[e] almost here, just step out for a second . . . so we can get you taken care of," Sapp said "no, I'm going home" and reached his right hand toward the direction of the gun, causing Osborne and another nearby firefighter to take "evasive maneuvers" by moving away. *Id*. at 225-26, 242. Sapp then drove away at a high rate of speed, passing through a stop sign without stopping as he continued heading north.

[6]     Using the truck's license plate and Osborne's identification of Sapp in a photo array, police located the Ram pickup truck in a motel parking lot at around

12:30 p.m. that same day. Sapp was arrested as he exited the motel, and the truck was searched, but no firearm was found either on Sapp, in the pickup truck, or in the motel room registered to Sapp. Police did find a replica or toy AR-15-style rifle behind the driver's seat of the Ram pickup truck. Police never found the gun that Osborne had seen in the truck.

[7] On June 15, 2018, the State charged Sapp with Level 4 felony unlawful possession of a firearm, namely a revolver, after having previously been convicted of Class B felony burglary in 2010. The State also charged Sapp with Class A misdemeanor operating a motor vehicle without ever having received a valid driving license, but later dismissed this charge. The trial court granted Sapp's motion to bifurcate the trial, so that the remaining charge would be tried first as a "possession of a firearm" only. *Appellant's Appendix Vol. II* at 50. On September 24, 2018, the trial court granted, over Sapp's objection, the State's motion to amend the charging information to add a habitual offender enhancement.

[8] At the two-day September 2018 jury trial, the State called various witnesses, including Osborne. As stated above, he described the gun that he saw in the pickup. He also testified that he was very familiar with firearms and had two decades of experience owning and shooting various guns, including pistols. He testified, "I own a pistol that is very similar to what I observed" in Sapp's truck, specifically, a .22 caliber Heritage Roughrider pistol with a six-inch barrel and a similar handle shape. *Transcript Vol. II* at 233. When asked, "Could it have been a toy gun?" he replied that he did not believe so, noting that upon seeing it

he was concerned for his safety. *Id*. at 234. Osborne explained that what he saw was "a heavy metal gun" and that "typically air soft pistols are of a plastic nature," and are usually shaped like a semi-automatic handgun with a slide on the top, whereas the gun he observed was what some people would characterize as "a cowboy revolver." *Id*. at 232, 234. Osborne said that he was standing and communicating with Sapp at the truck for a period of thirty to forty seconds during which he was in a position that allowed him to view the gun.

[9] At the conclusion of the State's evidence, Sapp moved for an Ind. Trial Rule 50 judgment on the evidence, which the trial court denied. Sapp rested without calling witnesses. The jury returned a verdict that Sapp did possess a firearm, and Sapp thereafter admitted the facts establishing that he was, by virtue of a prior burglary conviction, a serious violent felon.

[10] The trial court subsequently sentenced Sapp to the Indiana Department of Correction for six years for the Level 4 felony, enhanced by six years on the habitual offender finding, for a total sentence of twelve years, with six years executed followed by six months of work release, then six months of in-home detention, and thereafter five years of formal probation. Sapp now appeals.

## Discussion & Decision

[11] Sapp contends that the State presented insufficient evidence to convict him. When reviewing sufficiency of the evidence in support of a conviction, we will consider only probative evidence in the light most favorable to the trial court's judgment. *Burns v. State*, 91 N.E.3d 635, 640 (Ind. Ct. App. 2018). The

decision comes before us with a presumption of legitimacy, and we will not substitute our judgment for that of the factfinder. *Id.* We do not assess the credibility of the witnesses or reweigh the evidence in determining whether the evidence is sufficient. *Id*. at 640-41. Reversal is appropriate only when no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Id.* at 641. Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[12] In his bifurcated trial, the State was required to show that Sapp knowingly or intentionally possessed a firearm as charged, and Sapp's contention on appeal is that the State failed to prove that what he possessed was indeed a firearm. Relying in part on the incredible dubiosity rule, Sapp submits that "the detail and specificity of Osborne's testimony is very hard to believe, given his location relative to the supposed firearm, the short time he had to observe it, the fact that . . . it was largely concealed, and the circumstances under which he had the opportunity to observe it." *Reply Brief* at 3.

[13] Our courts have recognized that, for testimony to be disregarded based on a finding of incredible dubiosity, it must be inherently contradictory, wholly equivocal, or the result of coercion. *Gray v. State*, 871 N.E.2d 408, 416 (Ind. Ct. App. 2007), *trans. denied*. Moreover, there must be a complete lack of circumstantial evidence of the defendant's guilt. *Id.* at 417. The rule is rarely applicable. *Id.*

[14] In arguing that Osborne's detailed testimony about the gun was incredibly dubious, Sapp particularly challenges what the State maintains on appeal was testimony that Osborne saw a "trap door" on the revolver. The contested testimony is as follows:

> Q: Okay and you said you believed it to be a small caliber uh, why did you believe that?
>
> A: Yes sir. I have owned weapons like that in the past. Uhm, typically when a small caliber revolver will have a trap door on the back that you can then spin the cylinder to unload and re-load your, your rounds. Because small caliber pistols have less recoil, they can be enclosed like that and the cylinder doesn't have to be removed every time to eject all the shells.

*Transcript Vol. II* at 232.

[15] Sapp argues that, contrary to the State's assertion, Osborne did not actually state that he *observed* a trap door on the gun he saw in the pickup; rather, he merely stated that some small caliber revolvers *have* a trap door. We are unpersuaded by this technical argument and find that Osborne's testimony was his explanation as to why he believed that what he saw was a small caliber revolver, and from it we find that a jury could infer that the weapon he saw had the "trap door" feature. But assuming for the sake of argument that his statement did not sufficiently imply that premise, we find that other portions of Osborne's testimony on the issue was more explicit on the subject. Specifically, on re-direct examination, Osborne read from his statement that he had given to

police a few hours after the incident, where Osborne described the gun that he had seen as follows:

> It was a black revolver approximately six inch barrel, looked to be small caliber. Had a brown and white handle on it and it, *it had one of the trap doors for just to re-load it*. So that's kinda how I saw that it was a small caliber handgun. It's from my experience, what I've seen on some of those smaller ones.

*Id.* at 245 (emphasis added). We find that Osborne's testimony about what he saw, including having seen a trap door mechanism on the gun, was not inherently contradictory, wholly equivocal, or the result of coercion and does not fall within the narrow limits of the incredible dubiosity rule.

[16] Sapp also argues that, even if Osborne's testimony was not incredibly dubious, the evidence was insufficient, because "[n]o reasonable trier of fact could have found beyond a reasonable doubt that whatever Osborne saw through the window of Sapp's truck . . . was not a toy, replica, BB gun or pellet gun, as was the AR-15 style toy or replica found by the police in Sapp's truck just a few hours later[.]" *Appellant's Brief* at 6. Sapp acknowledges that our courts have sustained a conviction in circumstances when the firearm was not located after the defendant's arrest,[1] but urges that, unlike where a defendant displayed or

---

[1] *See e.g.*, *Gray v. State*, 903 N.E.2d 940, 943 (Ind. 2009) (sustaining an armed robbery conviction where defendant, with his hand in jacket pocket, instructed restaurant employees to "stay calm and no one would get hurt" and witnesses saw "what looked like could have been a weapon" and something with a black handle in his defendant's jacket pocket, although an actual firearm was never recovered).

used a weapon, he did nothing "to signify or imply that the item [in his truck] was a 'firearm.'" *Id.* at 5. We disagree.

[17] As to his conduct, Sapp was asked multiple times to exit his vehicle so that the first responders could make sure he was okay and check his vitals before having him sign paperwork and sending him home, but Sapp refused to exit. Then, when Sapp heard that the police were almost there, Sapp reached toward the console, where Osborne had seen the pistol, and sped away, passing through a stop sign without stopping. We thus reject Sapp's argument that his conduct could not support an inference that the gun observed by Osborne was an actual firearm.

[18] We likewise reject Sapp's broader argument that no reasonable trier of fact could have found from the evidence presented that what Osborne saw was a firearm (i.e., not a toy). Osborne, who had decades of experience with guns, testified in considerable detail about the gun that he saw, including its color, that it was a revolver, similar to one he owned, and had a "trap door" feature consistent with small caliber pistols. *Transcript Vol. II* at 232, 235. He also said that, when he saw it, he did not think it was a toy and, in fact, was afraid for his safety when Sapp appeared to be reaching for it. We agree with the State that "[t]he heart of [Sapp's] argument is . . . a request that this Court ignore the substantial evidence provided to the jury and credit Defendant's . . . claim that the firearm may have been a toy instead." *Appellee's Brief* at 7. Based on the evidence presented, we cannot say that no reasonable trier of fact could have found that Sapp possessed a firearm. *See Burns*, 91 N.E.3d at 641 (finding that

witnesses' testimony of intruders pointing guns and another's description of "black handguns" that "looked real" was sufficient to uphold conviction for burglary while armed with deadly weapon, despite that firearms were never recovered, and rejecting defendant's argument that State failed to prove that he used a real handgun and not an airsoft or squirt gun).

[19] Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.