## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2019, 11:03 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Randall J. Hammond
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lauren A. Jacobsen
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Shannon W. Kester,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

July 31, 2019

Court of Appeals Case No.
19A-CR-293

Appeal from the Allen Superior Court

The Honorable Wendy W. Davis, Judge

Trial Court Cause No.
02D04-1809-F6-1171

**May, Judge.**

[1] Shannon W. Kester appeals his convictions of Level 6 felony resisting law enforcement[1] and Class C misdemeanor reckless driving.[2] He presents one issue on appeal, which we restate as whether the State presented sufficient evidence to support his convictions. We affirm.

# Facts and Procedural History

[2] During the early morning hours of September 24, 2018, Detective Marc Deshaies and Sergeant Gary Hensler of the City of Fort Wayne Police Department were conducting surveillance in the area of Foster's Bar and Grill. Detective Deshaies was in plain clothes and drove an unmarked vehicle. Sergeant Hensler was in full uniform and drove an unmarked vehicle. They observed a Chevy Tahoe parallel park along the sidewalk just north of the bar's entrance. A man in a blue shirt exited the Tahoe, stood around the vehicle for a few minutes, and then entered the bar. The man in the blue shirt then returned to his vehicle, entered through the driver's side door, remained in the vehicle for twenty seconds, then walked to the rear of the vehicle. A white male approached the man in the blue shirt from a parking lot north of the bar. The two did not say anything to each other, but they did exchange something in a

---

[1] Ind. Code § 35-44.1-3-1.

[2] Ind. Code § 9-21-8-52.

hand to hand transaction. The white male walked back in the direction of the north parking lot and the man in the blue shirt walked back into the bar.

[3] Detective Deshaies believed the hand to hand transaction to be a narcotics exchange and notified other officers in the area. Seconds later, Detective Deshaies and Sergeant Hensler observed a vehicle[3] exit the north parking lot. The vehicle drove southbound on Clinton Street, made a U-turn onto Lafayette Street, and passed Detective Deshaies' vehicle. Detective Deshaies identified the driver to be the white male involved in the drug transaction, radioed the vehicle's direction, and asked other officers to intercede with a traffic stop. Detective Deshaies recognized the driver but could not immediately recall his name. At trial, Detective Deshaies identified Kester as that driver.

[4] Sergeant Hensler pulled out behind Kester as he travelled northbound on Lafayette Street and followed Kester. Kester turned eastbound on Dalman Avenue and then southbound on Warsaw Street. Sergeant Hensler continued eastbound on Dalman but radioed Detective Matt Foote to follow Kester southbound on Warsaw Street.

[5] Detective Foote was stationed near Foster's Bar and Grill during the surveillance operation. He followed Sergeant Hensler and Kester northbound on Lafayette Street and then eastbound on Dalman Avenue. Detective Foote

---

[3] Detective Deshaies testified the vehicle was a "black Grand Marquis." (Tr. Vol. I at 12.) Sergeant Hensler testified the vehicle was a "silver colored Mercury." (*Id.* at 22.) Detective Foote testified the vehicle was a "grey in color 2003 Mercury Grand Marquis." (*Id.* at 32.)

followed Kester when he turned southbound on Warsaw. He continued to follow Kester and activated his emergency lights. Kester did not immediately stop, so Detective Foote "chirped" his siren. (Tr. Vol. I at 34.) Kester started to slow down as if he was going to pull over to the side of the road, but then he rapidly accelerated. With Detective Foote in pursuit, Kester reached speeds of approximately sixty to seventy miles per hour in areas with speed limits of thirty to thirty-five miles per hour. Detective Foote testified that Kester "ran multiple traffic control signs, was fish tailing around corners almost side swiping cars, drove the wrong way on a one way street at least two times I believe, ran off the roadway and into a ditch, came out of the ditch, drove recklessly down an alley." (*Id.* at 35-36.) During the pursuit, Detective Foote's breaks failed. He had to use the emergency break to slow his car and pulled into a gas station. Detective Foote radioed that he was no longer involved in the pursuit.

[6] After Sergeant Hensler stopped following Kester at the intersection of Dalman and Warsaw, Sergeant Hensler executed a U-turn to try to get back to the area of the pursuit. He heard over the radio that Detective Foote had lost visual contact with the vehicle and proceeded to the general area where Detective Foote last saw the vehicle and located it. The vehicle was empty when Sergeant Hensler found it. He notified dispatch of the plate number and learned the vehicle was registered to Kester.

[7] Officer Cory Troyer and Officer Stephanie Reid responded to the pursuit. They were near the area where Kester's vehicle was found, and Officer Troyer

observed a male in dark clothing run across the street. They followed the man through yards and down an alley. Officer Troyer exited the vehicle and yelled "stop police." (*Id.* at 46.) The man fled from Officer Troyer, and Officer Troyer continued to yell "stop police." (*Id.*) Officer Troyer learned the suspect was Shannon Kester, and he yelled "Shannon get on the ground." (*Id.*) Kester slowed down, began to put his hands out and stoop down, but then he stood up and continued to run away. Officer Troyer caught up to Kester after Kester fell down a couple times. He warned Kester to stay on the ground or he would use his taser. Kester got back up and began to run again, and Officer Troyer deployed his taser. Officer Troyer and Officer Reid then apprehended Kester.

[8] The State charged Kester with Level 6 felony resisting law enforcement and Class C misdemeanor reckless driving. The trial court held a bench trial on December 13, 2018. The court found Kester guilty of both charges. The court sentenced Kester to two-and-a-half-years incarceration for the resisting law enforcement charge, with 183 days executed and the remainder suspended to probation. The court also sentenced Kester to an executed term of twenty days for the reckless driving charge. The court ordered the two sentences to run concurrently.

# Discussion and Decision

[9] In assessing whether there was sufficient evidence to support a conviction, we consider the probative evidence in the light most favorable to the verdict. *Burns v. State*, 91 N.E.3d 635, 641 (Ind. Ct. App. 2018). "It is the fact-finder's role,

not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). "Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict." *Burns*, 91 N.E.3d at 641 (internal citation omitted).

## Resisting Law Enforcement

[10] A person commits resisting law enforcement if the person "knowingly or intentionally: . . .flees from a law enforcement officer after the officer has, by visible or audible means, including operation of the law enforcement officer's siren or emergency lights, identified himself or herself and ordered the person to stop." Ind. Code § 35-44.1-3-1. The offense is a Level 6 felony if the person uses a vehicle to commit the offense. *Id.*

[11] Kester argues the State failed to present sufficient evidence that he was driving the vehicle involved in the police chase. He notes neither Detective Deshaies nor Sergeant Hensler saw him get into the Grand Marquis. Kester also notes an inconsistency in the officers' testimony about the color of the vehicle involved in the police chase, as Detective Deshaies testified the vehicle was black, Sergeant Hensler stated the vehicle was a silver, and Detective Foote indicated the vehicle was grey.

[12] However, both Detective Deshaies and Sergeant Hensler identified Kester as the driver of the Grand Marquis. After the Grand Marquis made a U-turn onto Lafayette Street, it passed Detective Deshaies' vehicle going the opposite direction, such that Detective Deshaies could easily see the driver. Detective Deshaies testified the white male he observed driving the Grand Marquis was the same white male he had observed in the hand to hand transaction. At trial, Detective Deshaies identified Kester as the white male driver. Sergeant Hensler also testified that Kester was involved in the hand to hand transaction and that he was the individual driving the Grand Marquis. Kester was the registered owner of the Grand Marquis, and Officer Troyer apprehended Kester near where the vehicle was abandoned. The State presented sufficient evidence to prove Kester was the driver of the Grand Marquis.

[13] Five different officers involved in the surveillance, pursuit, and apprehension of Kester testified at trial. While there is an inconsistency in the testimony regarding the color of the vehicle, it is the province of the trier of fact to resolve inconsistencies in witness testimony. *Embrey v. State*, 989 N.E.2d 1260, 1268 (Ind. Ct. App. 2013). We cannot say the testimony was so contradictory and unsupported by circumstantial evidence that no reasonable fact finder would believe it. *See Smalley v. State*, 732 N.E.2d 1231, 1236 (Ind. Ct. App. 2000) ("It is well settled that it is the jury's exclusive prerogative to weigh conflicting evidence . . . and thus we will not interfere with the jury's decision."). Therefore, we hold the State presented sufficient evidence to support Kester's conviction for Level 6 felony resisting law enforcement. *See Mason v. State*, 944

N.E.2d 68, 71 (Ind. Ct. App. 2011) (holding there was sufficient evidence defendant resisted law enforcement when he used a vehicle to flee from officers responding to a burglary), *trans. denied*.

## Reckless Driving

[14] A person commits reckless driving if the person drives at such an unreasonably high rate of speed as to endanger the safety or property of others. Ind. Code § 9-21-8-52. Detective Foote testified the Grand Marquis drove at nearly twice the legal limit in a residential area, ran multiple traffic control signs, went the wrong way down a one-way street, ran off the road, and almost side swiped other vehicles. And, as we held above, the testimony of Detective Deshaies and Sergeant Hensler demonstrates Kester was driving that car. Consequently, the State presented sufficient evidence to support Kester's conviction for reckless driving. *See Crussel v. State*, 29 N.E.3d 746, 751 (Ind. Ct. App. 2015) (holding sufficient evidence supported defendant's conviction for reckless driving when he drove more than thirty-five miles per hour over the speed limit on a dark road with cross streets and houses along it).

# Conclusion

[15] The State presented sufficient evidence to support Kester's convictions of resisting law enforcement and reckless driving. Therefore, we affirm.

Affirmed.

Mathias, J., and Brown, J., concur.