

FILED

Jun 22 2020, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Law Office of Christopher G. Walter, P.C.
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samantha M. Sumcad
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Micah Richard Kunkle,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | June 22, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2617<br><br>Appeal from the Marshall Superior Court<br><br>The Honorable Robert O. Bowen, Judge<br><br>Trial Court Cause No.<br>50D01-1811-F3-41 |

**May, Judge.**

[1]     Micah Richard Kunkle appeals his convictions of Level 3 felony aggravated battery,[1] Level 3 felony battery resulting in serious bodily injury to a person less

---

[1] Ind. Code § 35-42-2-1.5(2) (2014).

than 14 years old,[2] Level 3 felony neglect of a dependent resulting in serious bodily injury,[3] and Level 5 felony battery resulting in bodily injury to a person less than 14 years of age.[4] Kunkle presents two issues for our review:

> I. Whether his three convictions of battery subject him to double jeopardy; and

> II. Whether sufficient evidence supports his conviction of Level 3 felony neglect of a dependent resulting in serious bodily injury.

We affirm.

# Facts and Procedural History

[2] In August 2018 Kunkle began dating Dawn Walter. In September 2018, Kunkle moved in with Walter and her three children, R.W., A.L., and A.W. When Walter would go to work, Kunkle would take care of A.W., who was two years old. On October 2, 2018, Kunkle took Walter to work, dropped R.W. and A.L. off at school, and returned home to watch A.W. When Walter returned home from work, she noticed A.W. had burns on his back. When confronted by Walter, Kunkle said A.W. "messed with the spigots" for the

---

[2] Ind. Code § 35-42-2-1(c)(1) & (j) (2018).

[3] Ind. Code § 35-46-1-4(a)(1) & (b)(2) (2018).

[4] Ind. Code § 35-42-2-1(c)(1) & (g)(5)(B) (2018).

bathtub while Kunkle was grabbing a towel and A.W. fell into the tub and burned himself. (Tr. Vol. II at 125.)

[3] Walter wanted to take A.W. to the hospital, but Kunkle told her they would be drug tested and neither of them would pass. Kunkle also told Walter she would lose custody of her children as a result of the failed drug test. Walter ultimately decided to not take A.W. to the hospital. Around this time, Walter and Kunkle decided to stop letting Lyle Walter ("Lyle"), Walter's ex-husband and the father of her three children, exercise his regular visitation with A.W.

[4] On October 23, 2018, Walter woke to the sound of A.W. crying. Walter walked to the kitchen and found Kunkle holding A.W. over the sink, attempting to make him throw up. Kunkle claimed A.W. had found a bottle of pills and swallowed some. A.W. defecated in his pants during the commotion, so Kunkle took him to the bathroom. Kunkle began screaming at A.W., so Walter followed him to the bathroom and took over cleaning up A.W.

[5] Walter noticed Kunkle was getting very angry, so she called Lyle. Walter did not want her children to be around Kunkle while he was screaming and cursing at her. Walter told Lyle to call or come to the house if he did not hear from her in fifteen minutes. Kunkle heard the phone call between Walter and Lyle and became even angrier. Kunkle confronted Walter, and the two of them went outside to continue arguing. A.L., who was nine years old at the time, became scared and contacted her cousin, who then handed the phone to her father, A.L.'s uncle. Out of concern, A.L.'s uncle contacted A.L.'s paternal

grandmother and explained the situation. A.L.'s grandmother then called 9-1-1.

[6] When EMTs arrived, they noticed A.W. had burns on his body and told Walter that A.W. should be taken to the hospital. Soon after, Lyle arrived and agreed to take A.W. to the hospital. At the hospital, a doctor determined A.W. was suffering from a corneal abrasion and from bruises and lacerations to his ears, head, shoulder, legs, hips, and arms. Additionally, the doctor noted areas of his left side, buttocks, and lower back appeared to be healing from an immersion burn. Dr. Tara Harris testified that an immersion burn "basically means he was dipped into a scalding liquid." (*Id*. at 178.)

[7] Detectives interviewed Kunkle regarding A.W.'s injuries. Kunkle told police he had sought medical treatment for A.W. from a family friend named Dr. Hershberger. When police tried to follow up with Dr. Hershberger, police learned Dr. Hershberger moved to Wisconsin in 2015 and was deceased. On November 2, 2018, the State charged Kunkle with Level 3 felony aggravated battery, Level 3 felony battery resulting in serious bodily injury to a person less than 14 years old, Level 3 felony neglect of a dependent resulting in serious bodily injury, and Level 5 felony battery resulting in bodily injury to a person less than 14 years of age. A jury found Kunkle guilty of all charges.

[8] The trial court entered judgments of conviction on all four counts. The trial court sentenced Kunkle to sixteen years for Level 3 felony aggravated battery; sixteen years for Level 3 felony battery resulting in serious bodily injury to a

person less than 14 years of age; six years for Level 3 felony neglect of a dependent resulting in serious bodily injury; and five years for Level 5 felony battery resulting in bodily injury to a person under fourteen years of age. The court ordered the sentences for aggravated battery and for the two battery convictions to be served concurrently, and it ordered the sentence for the neglect conviction to be served consecutive to the other three. Therefore, Kunkle's aggregate sentence is twenty-two years in prison.

# Discussion and Decision

## I. Double Jeopardy

[9] Kunkle argues three of his convictions – one of aggravated battery and two of battery – violate his constitutional right to be free from double jeopardy. *See* Ind. Const. Art. 1, § 14 ("No person shall be put in jeopardy twice for the same offense."). Two offenses are the "same offense" in violation of Indiana's Double Jeopardy Clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense. *Spivey v. State*, 761 N.E.2d 831, 832 (Ind. 2002). To determine whether the statutory elements test is violated, we apply the federal test: "whether each provision requires proof of an additional fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932).

We review *de novo* whether a defendant's convictions violate this provision. *Spears v. State*, 735 N.E.2d 1161, 1166 (Ind. 2000), *reh'g denied*. "When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. If it will not, one of the convictions must be vacated." *Richardson v. State*, 717 N.E.2d 32, 54 (Ind. 1999), *holding modified by Garrett v. State*, 992 N.E.2d 710 (Ind. 2013) (modification unrelated to the case before us).

Specifically, Kunkle argues his convictions of aggravated battery and two counts of battery violate the "actual evidence" test. *See Spivey*, 761 N.E.2d at 832. The actual evidence test requires us to "determine whether each challenged offense was established by separate and distinct facts." *Richardson*, 717 N.E.2d at 53. To determine what facts were used to convict, we consider the charging information, the final jury instructions, the evidence, and the arguments of counsel. *Davis v. State*, 770 N.E.2d 319, 324 (Ind. 2002), *reh'g denied*.

To prove Kunkle committed Level 3 felony aggravated battery, the State had to present evidence that: (1) Kunkle; (2) knowingly or intentionally; (3) inflicted injury on A.W.; (4) that caused protracted loss or impairment of the function of a bodily member or organ. *See* Ind. Code § 35-42-2-1.5(2) (2014) (elements of crime). To convict Kunkle of the Level 3 felony battery, the State had to prove battery resulted in serious bodily injury, in addition to all the elements for the Level 5 felony battery. *See* Ind. Code § 35-42-2-1(j) (2018). The Level 5 felony

battery conviction required proof of the following: (1) Kunkle; (2) who was at least eighteen years of age; (3) knowingly or intentionally; (4) touched A.W.; (5) who was under fourteen years of age; (6) in a rude, insolent, or angry manner; (7) resulting in bodily injury. *See* Ind. Code § 35-42-2-1(g)(5)(B) (2018) (elements of crime).

[13]   The charging information for aggravated battery read:

> Micah Richard Kunkle did knowingly or intentionally inflict injury on A.W. that caused protracted loss or impairment of the function of a bodily member or organ, to-wit: A.W., age 2, causing *severe burns to his back, butt and testicles*[.]

(App. Vol. II at 26) (emphasis added).  The Level 3 felony battery resulting in serious bodily injury charging information read:

> Micah Richard Kunkle, a person at least eighteen (18) years of age, did knowingly or intentionally touch A.W., a person under the age of fourteen (14), in a rude, insolent, or angry manner by hitting and/or beating A.W. resulting in serious bodily injury, to-wit: *bruising to the head*, *scratches to his neck and/*or *bruising to the leg*[.]

(*Id*. at 26) (emphasis added).  The charging information for battery resulting in bodily injury read:

> Micah Richard Kunkle, a person at least eighteen (18) years of age, did knowingly or intentionally touch A.W., a person under the age of fourteen (14), in a rude, insolent, or angry manner by hitting and/or beating A.W. resulting in bodily injury a [sic] *bruising and/or physical pain*[.]

(*Id*. at 27) (emphasis added).

[14] As the language of the charges makes clear, the aggravated battery charge was based on the immersion burns on A.W., (*see id*. at 26), while the other two counts of battery were based on bruises and scratches, and bruises and pain. (*See id*. at 26, 27.) Similarly, in the final jury instructions for these three charges, the instruction for Level 3 felony aggravated battery alone was supported by the evidence of A.W.'s burns. (*See* App. Vol. III at 54 (containing final instruction for all counts).) Accordingly, the conviction of aggravated battery was based on evidence distinct from the other two battery charges. *See, e.g.*, *Vermillion v. State*, 978 N.E.2d 459, 465-66 (Ind. Ct. App. 2012) (no double jeopardy violation when State established separate offenses based on distinct facts).

[15] We turn next to Kunkle's convictions of Level 3 felony battery resulting in serious bodily injury to a person less than 14 years old and Level 5 felony battery resulting in bodily injury to a person less than 14 years of age to determine whether the evidence used to support them violates the actual evidence test. Kunkle notes the charging information for each count cites "bruising" as part of the bodily injury caused by the battery. (App. Vol. II at 26, 27.)

[16] The final instructions regarding these two battery charges were similar, but not identical, to the charging information. The final instruction for Level 3 felony battery resulting in serious bodily injury read:

> Micah Richard Kunkle, a person at least eighteen (18) years of age, did knowingly or intentionally touch [A.W.], a person under the age of fourteen (14), in a rude, insolent or angry manner resulting in serious bodily injury, to wit: to the head, neck, and body[.]

(App. Vol. III at 54.) The final instruction for Level 5 felony battery resulting in bodily injury read:

> Micah Richard Kunkle, a person at least eighteen (18) years of age, did knowingly or intentionally touch [A.W.], a person under the age of fourteen (14), in a rude, insolent, or angry manner resulting in bodily injury, to wit: bruising or pain, or corneal abrasion[.]

(*Id.*)

[17] To ensure Kunkle was not exposed to double jeopardy, the prosecutor needed to separate the facts in evidence to support separately the two counts of neglect and present argument that clarified for the jury the facts it needed to find to support each count separately. During closing arguments, the prosecutor reviewed these two counts separately, explained the elements for each count, and highlighted the evidence that proved each element.

[18] While going over the evidence to support the elements of Level 3 felony battery resulting in serious bodily injury, the prosecutor noted that, after Kunkle started to come around, A.W.

> gets injuries in his ear, in his head, on his shoulder, on his legs, on his hips, on his arms, on his upper legs. That happened over a

> period of time, Ladies and Gentlemen. . . . You know everyone knows the speed in [sic] which bruises will heal on their body. Look at these photographs. It shows you that this happened over a period of time.

(Tr. Vol. III at 69.) Then, when discussing the evidence supporting Level 5 felony battery resulting in bodily injury, the prosecutor said: "[H]ere we're talking about the fact that little [A.W.] is not only covered in bruises, but he has a corneal abrasion that Dr. Harris says would have been very painful left untreated. Um, pain also qualifies under this statute." (*Id*. at 71.) Because the prosecutor explained to the jury that it should convict Kunkle for one battery based on the bruises all over his body and for the other battery based on the corneal abrasion that would have been painful, we hold Kunkle was not exposed to Double Jeopardy when convicted of both counts of battery. *See, e.g.*, *Vermillion*, 978 N.E.2d at 465-66 (Ind. Ct. App. 2012) (no double jeopardy violation when State established separate offenses based on distinct facts).

## II. Sufficiency of the Evidence

[19] Kunkle argues the evidence was insufficient to prove he committed Level 3 felony neglect of a dependent resulting in serious bodily injury. In assessing whether there was sufficient evidence to support a conviction, we consider the probative evidence in the light most favorable to the verdict. *Burns v. State*, 91 N.E.3d 635, 641 (Ind. Ct. App. 2018). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Drane v. State*, 867

N.E.2d 144, 146 (Ind. 2007). "Reversal is appropriate only when no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Thus, the evidence is not required to overcome every reasonable hypothesis of innocence and is sufficient if an inference may reasonably be drawn from it to support the verdict." *Burns*, 91 N.E.3d at 641 (internal citation omitted).

[20] To prove Kunkle committed Level 3 felony neglect of a dependent resulting in serious bodily injury, the State was required to present evidence that: (1) Kunkle; (2) having care of A.W.; (3) knowingly or intentionally; (4) placed A.W. in a situation that endangered his life or health; and (5) said act resulted in serious bodily injury. *See* Ind. Code § 35-46-1-4(a)(1) & (b)(2) (2018) (elements of crime). Serious bodily injury is "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily ember or organ; or (5) loss of a fetus." Ind. Code § 35-31.5-2-292.

[21] Kunkle asserts: "Nowhere in her testimony does Dr. Harris ever state that the injuries became worse as a result of Kunkle . . . not seeking medical attention for the burns immediately after they occurred." (Appellant's Br. at 16.) However, our review of the record found evidence that Dr. Harris did so testify. For example, she explained:

> [W]hen burns are fresh, especially burns at this depth, partial thickness burns, they'll be very moist because essentially there's

been a blister and the top layer has come off, so they're wet when they first, um, happen, but then over time, um, if they don't have treatment, they get dry and the appearance of the skin changes as the body tries to heal it. Um, if they're appropriately treated, we try to keep that skin moist because that will help it heal, helps prevent infection, helps prevent it from cracking and getting worse. Um, but if it's allowed to just get dried out, then the skin, um, becomes darker pigmented and will dry out over time. He had, um, some of that and then some crusting where the healing tissue was starting to peel off.

(Tr. Vol. II at 179.) In addition, she said:

So burns are extremely painful. Most people have had a sunburn and you know how sensitive that is, um, with any movement or touching of it. They type of burn that [A.W.] had, the partial thickness being one (1) layer deeper, is typically even more painful because you've burned right to where those nerve endings stop, so they're very painful . . . the depth of his burn that's the most painful level to burn to. Um, so it – they're immediately extremely painful when the burn happens . . . and then it stays painful. It's really tender especially with any movement. Um, the – the kind of hardest – or most heartbreaking part of burns on this area – on the buttocks on a toddler that they're going to continue to – um, have to touch and wipe that area, so, um, any time he urinated or had a bowel movement, having that tissue contact that raw sensitive burned skin would have been very painful, um, and then having to clean it off, having to use wipes and clean off that area would have been extraordinarily painful.

(*Id.* at 180-81.) Because of the painfulness of the type of burns A.W. had, he should have received intravenous narcotic painkillers, "especially when we're going to be cleaning the area and putting new dressings on it . . . ." (*Id.* at 181.) Finally, she opined:

> [A.W.] had not gotten medical care even for significant injury like his burn, ah, which I would classify as medical neglect. Um, with the burn where it was, um, and seeing how very painful he was with that location, um, I think he would meet some definitions of torture with seeing him be in pain like that repeatedly over time and still not getting him attention.

(*Id*. at 188.)

[22] If he had been taken for medical care when the burns occurred, A.W. would have been treated with narcotic painkillers, especially when his diaper needed changed, but instead he remained at home to endure diaper changes that were repeatedly "extraordinarily painful." (*Id*. at 181.) In addition, if properly kept moisturized, burns do not dry out, crack, and turn a darker color, but A.W.'s skin had some of those changes. Dr. Harris' testimony was sufficient to demonstrate A.W. experienced repeated extreme pain as a result of Kunkle's failure to obtain medical treatment for A.W.'s burns. Therefore, the evidence was sufficient to support Kunkle's conviction of Level 3 felony neglect of a child resulting in serious bodily injury. *See*, *e.g.*, *Schweitzer v. State*, 552 N.E.2d 454, 458 (Ind. Ct. App. 1990) (victim's testimony that "she never before had been so painfully injured" sufficient to prove serious bodily injury).

# Conclusion

[23] Kunkle was not subjected to double jeopardy because the State argued different injuries to support each of his three convictions of battery. The State presented sufficient evidence of serious bodily injury related the exacerbation of pain from

the burns to convict Kunkle of Level 3 felony neglect of a dependent resulting in serious bodily injury. Accordingly, we affirm.

[24] Affirmed.

Robb, J., and Vaidik, J., concur.